UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ERIC HENDRICKSON,

    Plaintiff,

v.                                                                 Case No. 05-C-1305

HELENE NELSON, et al.,

    Defendants.

## ORDER

Plaintiff, who is incarcerated at the Sand Ridge Secure Treatment Center, filed a complaint asserting claims under 42 U.S.C. § 1983 and Wisconsin law. The case was recently transferred to this court.

Ordinarily, a plaintiff must pay a statutory filing fee of $350 to bring an action in federal court. 28 U.S.C. § 1914(a). Plaintiff, however, has requested leave to proceed *in forma pauperis*, pursuant to 28 U.S.C. § 1915.

Section 1915 is meant to ensure indigent litigants meaningful access to federal courts. *Nietzke v. Williams*, 490 U.S. 319, 324 (1989). An indigent plaintiff may commence a federal court action, without paying required costs and fees, upon submission of an affidavit asserting inability "to pay such fees or give security therefor" and stating "the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

Plaintiff filed the required affidavits of indigence. Upon review of the affidavits, it appears that plaintiff could not pay any portion of the filing fee. Thus, *in forma pauperis* status will be granted.

Though inmates who are involuntarily committed, rather than convicted, are not deemed prisoners under the Prison Litigation Reform Act, 28 U.S.C. § 1915A, I nevertheless maintain a duty to "screen" all complaints under 28 U.S.C. § 1915(e)(2) to ensure that they comply with the Federal Rules of Civil Procedure and that they state at least plausible claims for which relief may be granted. The complaint brings fifteen claims against several defendants.

**1. Fair Labor Standards Act**

The first claim alleges that Sand Ridge violates the Fair Labor Standards Act (FLSA) because it does not pay the plaintiff enough or provide him with suitable work. Yet plaintiff and others who are civilly committed are not governed by the FLSA. As the Seventh Circuit has held:

> People are not imprisoned for the purpose of enabling them to earn a living. The prison pays for their keep. If it puts them to work, it is to offset some of the cost of keeping them, or to keep them out of mischief, or to ease their transition to the world outside, or to equip them with skills and habits that will make them less likely to return to crime outside. None of these goals is compatible with federal regulation of their wages and hours. The reason the FLSA contains no express exception for prisoners is probably that the idea was too outlandish to occur to anyone when the legislation was under consideration by Congress.

*Bennett v. Frank,* 395 F.3d 409, 409-10 (7th Cir.2005) (internal citations omitted). Although plaintiff is a detainee, not a prisoner, the same considerations apply. As the Eleventh Circuit noted with respect to a pretrial detainee:

> Focusing on the economic reality of the situation in its entirety, we conclude that [a pretrial detainee] is not an "employee" under the FLSA. The purpose of the FLSA is to protect the standard of living and general well-being of the American worker. Because the correctional facility meets Villarreal's needs, his "standard of living" is protected. In sum, "the more indicia of traditional, free-market employment the relationship between the prisoner and his putative 'employer' bears, the more likely it is that the FLSA will govern the employment relationship." Villarreal's situation does not bear any indicia of traditional free-market employment contemplated under

2

the FLSA. Accordingly, we hold that Villarreal and other pretrial detainees in similar circumstances are not entitled to the protection of the FLSA minimum wage requirement.

*Villarreal v. Woodham,* 113 F.3d 202, 207 (11th Cir. 1997).

If pretrial detainees are not covered under the FLSA, it follows that *post*-sentence detainees–those who have been convicted of sexually violent crimes and are incarcerated under Chapter 980–are also not covered. The FLSA is intended for the protection of the American worker's standard of living, not for those whose custody is controlled by the state. *See also Harker v. State Use Industries,* 990 F.2d 131, 133 (4th Cir. 1993). Accordingly, Claim 1 will be dismissed.

**2, 9. Least Restrictive Environment**

The second and ninth claims assert that the defendants are violating various state laws providing for the least restrictive treatment or conditions of confinement. Plaintiff asserts that the incentive-based treatment programs coerced him into a harsh and restricted environment unrelated to his level of dangerousness. Although this may present grounds for a state law claim, the claims do not assert a federal constitutional claim. *See Thielman v. Leean,* 140 F. Supp.2d 982, 996 (W. D. Wis. 2001) ("[A]lthough plaintiff may be able to establish that the Wisconsin Resource Center's policy of transporting Chapter 980 patients in full restraints violates his patient rights under state law, he does not have a state-created liberty interest that entitles him to procedural protections under the Due Process Clause.") The claims are accordingly dismissed without prejudice.

**3, 4, 5, 7, 8, 10, 13, 14, 15. Speech, Property, Privacy and Other Restrictions**

Claims three, four, five, seven, eight, ten, thirteen, fourteen and fifteen assert that various restrictions on civil committees like plaintiff are unconstitutional because they are essentially the

3

same as restrictions placed on prisoners. In particular, the plaintiff complains of the institution's telephone and visitor policies as well as mail censoring and opening by staff. The complaint also states that movement is restricted and that inmates must sleep in living quarters identical to prison cells. The plaintiff is denied access to adult films and reading material, cell phones and computers. The spending of money is restricted, as is the property plaintiff is allowed. For example, at one point the institution denied plaintiff and others the ability to purchase a video game system. Plaintiff is also made to sleep on an uncomfortable bed and has little or no access to views of nature or wildlife. He is also locked in his cell every night, and his cell is subject to random search.

Viewed against the state's act of locking up civil committees and incarcerating them against their will, the allegations of mail censoring, telephone monitoring, and the like, pale in comparison. Indeed, when the state assumes such a high level of control over an individual, it is only natural that the custodian must maintain additional control over almost every aspect of the individual's life. Practically speaking, this means that Chapter 980 inmates may be subjected to the same general restrictions that prisoners are subjected to, so long as they are not being punished and the conditions of confinement are not *worse*:

> [D]etainees may be subjected to conditions that advance goals such as preventing escape and assuring the safety of others, even though they may not be punished. Does placement in a prison, subject to the institution's usual rules of conduct, signify punishment? The answer, given by *Bell v. Wolfish,* 441 U.S. 520 (1979), is no. Wolfish held that pretrial detainees, who like civil committees may be held for security reasons but not punished, may be assigned to prisons and covered by the usual institutional rules, which are designed to assure safety and security. Our plaintiff were not assigned to high-security institutions, solitary, lockdown, or otherwise onerous confinement. And one must keep in mind that they are pretrial detainees as well as civil committees: criminal charges against them are pending. *If pretrial detainees may be subjected to the ordinary conditions of confinement, as Wolfish holds, then so may persons detained before trial as sexually dangerous persons.*

4

*Allison v. Snyder,* 332 F.3d 1076, 1079 (7th Cir. 2003) (italics added). Given that pretrial sexually dangerous persons may be detained in prison-like conditions *prior* to being found guilty, it follows that their post-trial and post-sentence confinement conditions may also be prison-like. There is no indication in the complaint (nor is any imaginable) that the various restrictions on Chapter 980 inmates amount to punishment, nor is there any hint that the restrictions are more severe than those faced generally by pretrial detainees or prisoners.[1]

> Nothing in plaintiffs' allegations suggests that the conditions of their confinement are punitive. Plaintiffs' allegations that units on wings A and B have security doors, that Sand Ridge was designed and built as a prison and that it is the only mental health facility in the United States surrounded by a high voltage fence do not state a conditions of confinement claim. As noted above, civilly committed individuals may be detained in conditions designed to prevent their escape and maintain security.

*Thiel v. Nelson,* 422 F. Supp.2d 1024, 1031 (W. D. Wis. 2006). The restrictions are thus permissible under the Fourth and Fourteenth Amendments, and neither do they constitute an impermissible infringement of the plaintiff's First Amendment rights.

He also asserts that the restrictions on his property violate federal consumer protection laws, but such a finding would be impossible given the well-acknowledged principle that civil confinement facilities have the ability to restrict the property rights of those under their care. Put another way, plaintiff's claim alleges a federal right to purchase any items he wants without interference from the institution, and no such right has been recognized.

---

[1] Claims seven and nine assert that the conditions are harsh in order to coerce the plaintiff into proceeding with the kind of treatment that medical staff would prefer. (Compl. ¶ 51(f)). This demonstrates that staff is not "punishing" the plaintiff impermissibly but instead is attempting to change his behavior.

5

**6. Equal Protection**

Claim six asserts that plaintiff is not treated similarly to other civilly (or criminally) committed persons because his placement in the severest wing of the institution is based on his refusal to participate in treatment, whereas regular (non-Chapter 980) inmates can avoid the harshest treatment in their facilities merely through good behavior. In other words, it is easier for a criminal inmate to receive "normal" placement in his respective facility than it is for a Chapter 980 inmate because only the Chapter 980 inmate must take part in treatment. Plaintiff admits, however, that he is treated the same as all other Chapter 980 inmates (the only difference being his apparent refusal to participate in treatment). His claim appears to be that even criminally convicted inmates are treated better because they do not have to participate in such treatment. But that does not constitute an equal protection violation; to succeed, the plaintiff would have to point to similarly situated people who were treated differently than he was. Although "[s]ometimes detainees in different sorts of confinement are similarly situated for the purposes of the challenged policy," that is not the case here. *May v. Sheahan,* 226 F.3d 876, 882 (7th Cir. 2000). Here, the different treatment between prisoners, other civil detainees and Chapter 980 detainees is emblematic of, and motivated by, the very policy underlying the differences in treatment. Plaintiff is being asked (or coerced, in his view) to participate in treatment for his sexual illnesses, which is a key component of the Chapter 980 regime that is absent from other forms of confinement. The claim is thus largely circular: plaintiff is treated differently because his reason for confinement is different from others in custody. Thus, almost by definition, Chapter 980 inmates are not similarly situated to standard criminal inmates, at least for purposes of challenging the differences in treatment alleged here.

6

**11, 12. State Privacy Violations**

Claims eleven and twelve allege that the institution is violating state laws allowing patients to make and receive telephone calls and send sealed mail. These claims do not raise issues of constitutional or federal law, and therefore will be dismissed without prejudice.

**Conclusion**

The gist of the complaint is that involuntarily committed Chapter 980 inmates like the plaintiff are essentially treated like prisoners. Even if true, that would not violate the Constitution so long as their treatment did not constitute impermissible punishment. *Allison v. Snyder,* 332 F.3d at 1079. Judge Crabb has set forth a similar conclusion:

> Pretrial detainees and civil committees may be assigned to prisons and subjected to the normal rules and regulations designed to advance security and safety without violating the due process clause. *Bell v. Wolfish,* 441 U.S. 520 (1979); *Allison,* 332 F.3d at 1079. Petitioner does not allege that the conditions to which he is subjected (not being allowed to use as many electronic devices, being charged higher canteen prices, made to wear prison clothing when visiting with friends and family, offered fewer recreational opportunities and provided less furniture and fewer electrical outlets) are conditions different from those imposed on any other civil detainee at the resource center. Petitioner fails to state a claim that these restrictions violate his due process right to be free of punishment.

*Laxton v. Watters,* 348 F. Supp.2d 1024, 1031 (W. D. Wis. 2004).

For the reasons given above, the motion to proceed *in forma pauperis* is granted. The complaint is dismissed with prejudice, except that the state law claims are dismissed without prejudice.

**SO ORDERED**.

Dated this   10th   day of August, 2006.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
